The first case on the call of the docket is Agenda No. 1, No. 124112, People of the State of Illinois v. Aaron Jackson. Susan, Maureen, Wilhelm, please. You may begin. May it please this court, counsel. I'm Susan Wilhelm with the Office of the State of Illinois Defender, and I represent the defendant, Aaron Jackson. And the evidence that Aaron Jackson shot Mayor Thornton is not sufficient to establish his guilt beyond a reasonable doubt. We do review the evidence in the light most favorable to the state, but this court said in People v. Wheeler that appellate review has to include consideration of all of the evidence, not just the evidence convenient to the state's theory of the case. And under that standard, the testimony of the two witnesses who placed Aaron Jackson leaving the crime scene simply cannot be reconciled. Nor Tisha Ball and Gilda Lott have Aaron Jackson exiting the car from both the driver's side and the passenger's side. They cannot obviously be both correct. Nor Tisha testified she didn't see anyone around Lott, where Lott said she was at the time of the crash, and that she was not with Lott, refuting her testimony. And our physical evidence here is weak and doesn't place Aaron Jackson inside of the car. After he was identified by Nor Tisha Ball at Detective McAfee's urging, according to her testimony, the investigation in Mayor Thornton's murder narrowed significantly. ISP case agent Bates didn't check to see why Mayor Thornton was not at work, since he was in work hours. He didn't subpoena his phone records. He didn't check his phone for fingerprints. And he didn't try to determine who deleted Mayor Thornton's cell phone call log. And even with all this focus squarely on Aaron Jackson, they didn't place him inside Mayor Thornton's car. The only DNA that linked Aaron Jackson to Mayor Thornton was a blood spot on the front pocket of his jeans, a small stain consumed in the testing process. With an extremely low population frequency, the jade linners, the state's expert, could not state it was a match to Mayor Thornton. The fingerprints on the car were only compared to Aaron Jackson. They were never run through APHIS. So we had 57 prints off the car, with 46 suitable for comparison. Only one from the exterior matched Aaron Jackson. And the age of the print could not be determined, again, according to the state's own expert. However, the prosecutor exaggerated the strength of this evidence in his closing argument, claiming that the DNA was a match and that the fingerprint was fresh. The state argues that the evidence is sufficient for a conviction, yet the state found it necessary to misstate these critical pieces of evidence to the jury in closing. And this leads into my second argument, that the prosecutor committed reversible error in this closing argument when he exaggerated this evidence, claiming that the DNA was a match and the fingerprint was fresh. These are clear misrepresentations of the evidence, which the appellate court recognized. It recognized that these were error, but then it didn't conduct a proper review to determine if this was, in fact, reversible error. As this court stated in Sebi, the only question in a first-pronged plain error case, once clear error has been established, is whether our evidence is closely balanced. And you have to make a common-sense assessment of the evidence. And there can be minor inconsistencies within this evidence, and there can be inconsistencies in testimony. The question is whether the prosecution or defense accounts of the events are fanciful. And here, Gildelot's testimony is simply fanciful. She had a motive to fabricate. She was not present at the first trial. She only came forward for the second trial when she was in jail, hoping to obtain leniency for her sentence. She was impeached by the defense investigator, by the clerk at the Shopwise Market, and she was impeached by her own previous statements. She was even impeached by Morticia Bell, the other eyewitness. So under Sebi, we also ask whether the extrinsic evidence corroborates or contradicts either version of the facts. And here, it clearly contradicts Gildelot's testimony, that she saw Aaron Jackson getting out the driver's side of Mayor Thornton's car. It's impossible to imagine anyone crawling past these bloody airbags and over the body of Mayor Thornton to exit out the driver's side door and then to emerge with only a tiny spot of blood on his jeans. Again, so small, it's consumed by the testing process. With no airbag residue, without leaving fingerprints, hair, or other fiber evidence inside of that car. So here we have closely balanced facts, yet the closing argument used facts that were not in evidence, specifically misstating and exaggerating the clear testimony of the state's own witnesses to place Aaron Jackson inside Mayor Thornton's vehicle. And I would argue that this error tipped the scales of justice against Aaron Jackson and requires his reversal. If this court does not reverse the conviction for those reasons, then it should remand for further prank or proceedings for two specific reasons. First, Aaron Jackson showed possible neglect of his case. But the trial court and the appellate court erroneously applied the standard that he had to show ineffective assistance of counsel at this preliminary hearing. At the preliminary crankle inquiry, you have to ascertain the underlying factual basis of the claims and allow the defendant to support and explain his claims. If he can show possible neglect, new counsel is appointed. Only then will a full hearing occur on the ineffectiveness claims where my defendant would have counsel to argue the claims for him. If ineffective assistance is determined at the preliminary crankle inquiry, there would be no reason for the second hearing where he has the appointment of counsel. And the two-step procedure is really necessitated by the fact that defendants are pro se at this initial inquiry. And allowing the initial inquiry to stray beyond possible neglect and to proving the higher standard of actual ineffectiveness puts a pro se defendant into an unequal position against his trial counsel. And this is really illustrated here in our case where Aaron Jackson made specific claims that showed possible neglect. His trial counsel failed to present evidence that this partial DNA profile was misleading and then allowed the state to misrepresent the state's expert Jay Winters' testimony in his closing. Jackson's trial counsel said, oh, this is just trial strategy. I was arguing that Jackson could have picked up that blood from outside of the vehicle. That doesn't prove he's inside. So his trial strategy, he says, is conceding that it's the mayor's blood, but that this is accidental contact. But that's not what he did. Instead, trial counsel argued that they can't tell you the blood is John Thornton's, and the record belies his trial strategy explanation. He also explained he would have objected if he thought something was improper, but he allowed, right after he argued that the blood was not Mayor Thornton's, he allowed the prosecutor to say it was the blood, that it was indeed the mayor's blood, that it was a match. He failed to recognize the misstatement, and this shows his neglect of the case and his failure to advance a clear strategy. And for that reason, this court should remand for appointment of counsel and further Krenkel inquiry. Counsel, did the Krenkel proceeding become adversarial when the trial judge permitted the prosecutor to comment on the evidence that was elicited by, from the defendant and his attorney? Exactly, Your Honor. Is that the error that you're really complaining about here with respect to the Krenkel proceeding? I think that there are two errors with the Krenkel proceeding, and that is definitely the second error, Your Honor. This preliminary Krenkel inquiry became flawed when the State had adversarial participation. The State can only participate in a de minimis manner, but here it vouched for the effectiveness of Jackson's trial counsel and it advocated against Jackson. And the appellate court found that that was more than de minimis participation. And do you agree with the appellate court? Yes, I do. I think that there's a difference between the State saying these are facts, here are things that are in the record, and saying, oh, I think he did a fabulous job. I think that trial counsel did everything he could to defend this man. And instead of being in a neutral position, the State clearly aligned himself in defense counsel against my client. And in that way, he created error in this process. The appellate court, when it was reviewing this, said that his court in Jolly did not hold that allowing the State participation could never amount to harmless error. And in doing so, the Fifth District followed the Second District Court that says that Jolly errors aren't structural error, so they're subject to harmless error. But the court is missing the nature of the error and the point that this court had made in Jolly. The problem with this is that the State's adversarial participation leaves us without an objective record that the reviewing court needs for a harmless error review. It's not the nature of the error here, it's the result of the error. That we're left with this unreliable record that cannot be examined for harmless error review. So, again, it's the circumstances created by this error that cause the unreliability. What circumstances, counsel, are in place that would obviate the necessity of this court following what the Second District, as you were just mentioning? I think they employed a rule that all non-structural errors are subject to harmless error review, right? Yes, they did. And I don't think that that's consistent with this court. This court has found out, has stated in Glasper, that it's free to determine whether an error is so severe that reversal is required, whether or not the error is a structural error. And, again, it's not just the nature of the error here, it's the result of the error. Can we rely upon this record to view what was elicited at this record in a neutral fashion? And I would argue that in this case, we cannot. Because of the state's adversarial participation, and also because the court was somewhat adversarial against my client. The court basically told him, you have to prove your point, are you calling your counsel a liar? This proceeding was not a neutral proceeding at all, and my client was unrepresented. This, again, is a preliminary inquiry to show possible neglect of the case that very quickly went beyond that to trial counsel defending himself against my client, and my client being thrown an adversarial position, not only against his counsel, but also against the state. For those reasons, I would argue that we simply do not have the kind of objective, neutral record here that would allow us to do a harmless error review. And for that reason, I would ask that this court does not reverse for one of the earlier reasons that because the Krankel proceedings had flaws, that this court, if it finds that the state participated in an adversarial manner, that this court remands for a new preliminary inquiry before a new judge. But if this court does find that Aaron Jackson showed possible neglect of his case, then they should remand this, they should reverse the trial court's dismissal and remand with the appointment of counsel for a further Krankel inquiry. Thank you very much. Thank you, Ms. Wilson. Mr. Shibula. Good morning, Your Honors. May it please the court, counsel, I'm Assistant Attorney General Michael Shibula on behalf of the State of Illinois. This case presents a number of different claims and issues, but unless the court has specific questions, I'd like to focus on three in particular. The evidence in this case as it relates to the defendant's sufficiency claim and all of his claims that have prejudice components. Second, I'd like to very briefly discuss the closing argument. And third, focus on the prosecutor's very brief involvement at the very end of the preliminary Krankel inquiry. The defendant's first claim is that the evidence was insufficient to convict him of the murder of Mayor John Fulton. As the defense counsel alluded to, and I think as Your Honors know, that's a very difficult burden for a defendant to meet. He must prove that when viewing the evidence in the light most favorable to the state, no reasonable juror could have possibly found him guilty. He cannot come close to carrying that burden on this record. At trial, the state presented multiple eyewitnesses who presented their accounts that they saw the mayor's car driving down the street, they heard gunshots, they saw the car crash into a tree, and they saw the defendant get out of the car and limp away. Each one of these eyewitnesses had known the defendant for years and was able to easily recognize him. And their accounts were corroborated by very strong physical evidence. First of all, there's no dispute that the defendant's fingerprint was found on the outside of the mayor's car, right next to the passenger door handle. Second, there's no dispute that the defendant was tested for gunshot powder residue about four hours after the shooting and was found to have a large amount of gunshot powder on his hand, his shirt, and his pants. Third, there was blood on the defendant's pants. As counsel alluded to, there was not enough blood to make a complete DNA profile, but there was enough blood to make a partial DNA profile. And the partial DNA profile of the blood on the defendant's pants was the same as the mayor's partial DNA profile. Last, the defendant gave a videotaped statement to police. It was introduced into evidence. You're honored to review it. The defendant admits being in the vicinity of the shooting. In fact, he says he heard gunshots. The most important part of that video, though, is you can see that the defendant has a very bad limp. The detective in the video asks him, what caused your injury? And he said, well, I got shot. I believe it's undisputed that that's a lie. In the video, the detective lifts up the defendant's pants leg and confirms there was no gunshot wound, there was no blood. The reason for the injury is he had injured in a car accident, and he limped away, just as all of the eyewitnesses said he did. Now, counsel wants to point out that there are some inconsistencies in the eyewitnesses' accounts. We admit that there are, but they're all very minor inconsistencies, like who was standing where, who called the police, things of that nature. This court has repeatedly held, in cases like Evans, Brooks, and many others, that eyewitness accounts are to be expected. These are women that observed a very traumatic event, saw someone get murdered, and then they testified about it years later. It was up to the jury to resolve these claims, these inconsistencies, and they did. So this is not a closed case at all. The defendant is clearly guilty. So a sufficiency claim fails, as well as any claim that has a prejudice component. If I could briefly mention the State's closing argument. The defendant has identified two alleged misstatements. These were very isolated statements in a very long, 31-page closing argument. The first is that one time, when discussing the fingerprint, the prosecutor referred to it as a fresh print, as in a relatively new print. Second, one time, when discussing the DNA and the blood, the prosecutor used the word match. As counsel alluded to, these were not preserved in the trial courts. They can only be reviewed under plain air, and the appellate court resolved them under the prejudice prongs of plain air. We, of course, agree with that analysis. Clearly, he cannot meet the first prong, plain air, because this is not a closely balanced case, for all the reasons I just mentioned. As far as second prong, plain air, this court has repeatedly held, in cases like Adams and Nicholas, that alleged mistakes that are confined to closing argument do not qualify as second prong, plain air. I'd like to briefly mention an alternative argument, and I think it's important to clarify some of the things counsel just said, is that we don't believe that the defendant met even the first threshold requirement of plain air to show clear and obvious error, to show that what the prosecutor said was incorrect. Just to clarify, I think, what counsel said, counsel put forward that what the prosecutor argued was that there was a match between the DNA on the blood on the defendant's pants and the mayor's. That's not what the prosecutor said. The prosecutor was very careful to expressly say that they could not definitively say that the blood on the pants was the mayor's blood. He was very careful to say they could only say it was probably the mayor's blood, because they shared the same partial DNA profile. As for the fingerprint, calling it a fresh print, that's a reasonable inference that prosecutors are allowed to make. As I mentioned, the fingerprint was on the outside of the car, and an expert testified that fingerprints are very easily eradicated by things like rain, snow, sunlight, heat, humidity. Given that these are everyday factors, it was reasonable to infer that it had to be a fresh print. As to Krankel, Your Honor, if I could just briefly sidetrack, counsel has slightly changed her argument on the merits of the Krankel claim. Originally, it was argued by a defendant that trial courts cannot consider the merits of a claim. That's clearly wrong. As we've pointed out in a brief, this Court has held repeatedly that merits should be considered at the preliminary Krankel inquiry. Counsel has slightly changed her argument to say that the trial court did not consider whether there was possible neglect in this case. If you look at the trial court's opinion, clearly the trial court was saying there was no possible neglect in this case. The trial court didn't even mention Strickland, didn't mention the prongs of Strickland. The trial court went through exactly what defense counsel did in a very lengthy, detailed opinion, saying how counsel aggressively cross-examined all these different witnesses, had a very clear strategy, and investigated all these possible alibi witnesses. So clearly the trial court was applying the correct standard. May I ask a question? Maybe I'm mixing up cases, but in this case, isn't it a different trial judge who heard the Krankel hearing than the one that heard the trial? Right? That's absolutely correct. We acknowledge that. So how is he making those kind of judgments when he was not the trial court, not the judge who heard the trial? Sure, Your Honor. I think there's two bases. First, had the preliminary inquiry where it went into a very long discussion with defendant and defense counsel, and defense counsel responded to each one of these allegations. Here's what I was thinking, Your Honor. Here's why I did this or did that. And as the trial court said in the hearing that he planned to review the trial transcripts, and you will see in the written opinion, the trial court says, I've now read all the trial transcripts. And the trial court goes through these claims and says, for example, during the preliminary hearing, the defendant complained that the defense counsel didn't attack certain inconsistencies in the witness testimony or supposed weaknesses in the physical evidence. And the court said, I've reviewed the trial transcripts, and defense counsel raised all of these points that should have been raised. So I think Your Honor is right that this trial judge that handled the Krankel proceeding was not the one that handled the first two trials. But clearly, the judge reviewed all of the trial transcripts, and these are claims that can be reviewed on the trial transcript because they have to do with things like supposed failure to object, supposed failure to challenge certain things. As to the final issue, which I think is probably the most interesting issue in this case, is the prosecutor's brief involvement at the very end of the preliminary Krankel inquiry. Just to kind of set the table a little bit, which I think might be helpful, there is some agreement between the parties on certain issues. So just to be clear, the parties agree that, as a general matter, prosecutors' involvement in the preliminary inquiry should be very limited. The parties agree that the participation should not be adversarial. We point out that in our brief that the defendant didn't actually argue that it was adversarial, but we, on the State's behalf, assumed for the sake of argument that participation in this case was adversarial. So the question, I think, that's before the Court, too, whether this Court will stick with Jolly and how courts have interpreted Jolly as allowing harmless error analysis, and assuming the Court will continue to do that, whether the participation in this case was harmless. On the first point, I think it's important to note that, in the appellate court, the defendant expressly argued that, in some cases, the prosecutor's adversarial participation can be harmless. And for that reason, the defendant in the appellate court expressly said that harmless error analysis is appropriate. And when a defendant argued that, the defendant was absolutely correct. That's what this Court did in Jolly. This Court applied a harmless error analysis in Jolly. And this Court specifically declined in Jolly to hold that adversarial participation is structural error. If an error is not structural, then obviously it has a harmless error component. That's how the appellate court has interpreted it, not just in the case below, but in cases like People v. Skilling. Now, the defendant has now, once he's reached this Court, completely reversed his position and said that harmless error analysis is never appropriate. So according to the defendant's new theory, any adversarial participation, no matter how small, automatically requires remand for a completely new hearing in front of a completely new judge. So this is not only contrary to what he argued below, contrary to Jolly, contrary to the appellate court's decision. I think it's contrary to a well-functioning judicial system. We provide a couple of hypotheticals in our brief. I'll just briefly mention one. Before you do, would you agree that Jolly could be read as suggesting that harmless error analysis is never appropriate? I don't think so, Your Honor. First of all, there's the comment in Jolly about that we're not calling this structural error. The Court could have simply said, yes, this is structural error. The State specifically said, we want to clarify that this is not structural error, and the Court said no. So your argument would be regardless of even if that is in there, the fact that they specifically said it's not structural error would necessitate a harmless error analysis? I think so, Your Honor. I think that's how the appellate court has interpreted it in a couple of cases we cite in our brief. I think that makes sense. I think, as Your Honors know, it's very rare to have any kind of claim that's not subject to some sort of prejudice component or harmless error component. Obviously, Frank was on a constitutional claim, but even constitutional claims, like the Sixth Amendment right to counsel, has a prejudice component. So we don't see any reason why we wouldn't apply that here. For example, as we discussed in our brief, assume this was a statutory rape case and the defendant complained that his lawyer didn't put forward evidence that the underage victim was dressed provocatively and assumed that the prosecutor pointed out that would be a completely inappropriate argument and handed the judge cases making that point. Obviously, that's adversarial participation. And under defendant's theory, we would have to remand for a completely new hearing from a completely new judge, even though all of us know that that's a completely meritless claim. He would never be entitled to counsel for that claim. There are certain situations where even though the prosecutor participated in an adversarial fashion, and he shouldn't have, it was harmless because we have the record we need to review that claim. And so that leads to the question of whether the participation in this case was harmless. And, again, I think there is some agreement between the parties on some issues related to that. I think the parties agree that the most important part of the preliminary frame of inquiry is that we create a record that allows the reviewing court, either the appellate court or this court, to consider the claims and determine whether the trial court should have appointed counsel. I think Jolly is an excellent example of a case where we did not have that record that we needed. And I think there's three elements that are apparent in Jolly that might be repeated in other cases. First, in Jolly, this court pointed out that the defendant didn't have an opportunity to elaborate on his claims at the preliminary inquiry. This court pointed out that the defendant was repeatedly interrupted when he tried to explain his claims. So, obviously, if we have a case where the defendant can't elaborate on his claims, we don't have the record we need to review them. Second, in Jolly, the prosecutor was allowed to actually put on evidence. In Jolly, the prosecutor cross-examined defense counsel and elicited testimony that was damaging to the defendant's claims. So there was sort of a bias in the record there. Third, there was the nature of the claims in Jolly. In Jolly, a lot of the defendant's claims had to do with things that were not part of any record. They were about conversations he supposedly did or did not have with counsel off the record about being informed about certain things, waiving certain rights. So we didn't have the record we needed to resolve whether those claims had potential merit, whether he should have been appointed counsel. This case, I think, is a good example, though, where the participation, even though we're assuming for the sake of argument it was adversarial, it was certainly harmless. First of all, I think we all agree, there's no dispute, this defendant had an opportunity to explain every single one of his claims. The trial court began the proceeding by asking the defendant to elaborate on all of his claims and for defense counsel to respond when it was appropriate. This was a very, fairly long process. It lasted about 17 pages of transcript. And during that time, the prosecutor did not say one word. It was only at the end of that, after the defendant had finished talking about every single one of his claims, the court asked the defendant, is there anything else you want to say? Is there anything you haven't had an opportunity to address? The defendant said no. It was only at that point that the court turned to the prosecutor and said, would you like to comment? The prosecutor didn't introduce any evidence. He didn't cross-examine anyone. He just offered a couple brief comments that lasted less than two pages of transcript. And most of those comments simply repeated what had already been said. The prosecutor first said that most of these claims went to sufficiency, which simply repeats what the trial court and defendant had said earlier. The prosecutor next said that the claims actually related to what counsel did were strategic decisions that counsel had said. And that's an accurate statement of what counsel had just said. And third, the trial court had already indicated that he planned to read all of the trial transcripts. And defense counsel said that he, or excuse me, the prosecutor said that he believed once the court did that, he would find that defense counsel was a tenacious opponent. So I would submit that this was, even though assuming it was adversarial, it was harmless. First of all, we know exactly what the defendant's claims are. The defendant does not suggest in any way that he was prevented from explaining them. He, in fact, wrote a letter to the court thanking the court for an opportunity to explain all of his claims. The prosecutor did not offer any evidence. The prosecutor just offered brief comments that repeated what was said earlier. And I think it's also important to note the nature of these claims. The defendant has three claims. They are all strategic decisions. The failure to call a witness, the supposed failure to challenge certain evidence, and the failure to object to the closing argument that we've discussed. As we discussed in our brief, as a matter of law, all three of those are strategic decisions. Defense counsel, at the preliminary hearing, explained they were all strategic decisions. Defendant does not object or does not dispute that they were strategic decisions. And that's important because it's settled that strategic decisions cannot be raised in cranked proceedings. The defendant even says that in his opening brief. That's settled law. That's the court's decision in Chapman and Banks, among others. And even if we set that aside, these all relate to things that can be reviewed based on the trial record, whether counsel should have objected or not, whether counsel should have called a witness who implicated the defendant at the first trial, things of that nature. So although counsel has said that we do not have an objective record, counsel has not pointed out what we are missing, why we can't decide these claims. Again, they all relate to strategy. Strategy cannot be raised in crankle. And even if we get to the merits, they all relate to things that are apparent from the trial record. So unless there are questions, we ask this Court to affirm the appellate court's decision. If it seems to me the defendant's argument is twofold as to the adversarial nature of the proceeding. One, the state's attorney's involvement. And the second, that it became adversarial between defendant and his counsel. Is that a basis for reversing? I'm not aware of any. I think there's a couple of ways to do that. I'm not sure that the defendant has preserved that claim. I don't think that's something that was raised below in the PLA. Setting that aside as to the merits. I'm not aware of any case from this Court holding that. But if this Court were to review the record, I think the questioning of defense counsel went exactly how it was supposed to go. Defense counsel was not adversarial in any way. When the defendant raised a claim, for example, defense counsel didn't call certain alibi witnesses. Defense counsel responded as he should have. Well, we investigated those. One we could never find. The other was drunk at the time. And I didn't think putting on an alibi witness would be credible to the jury because we have the defendant's statement admitting he was at the scene of the crime. The only supposed adversarial comment the defendant identifies that defense counsel supposedly made was that at one point defense counsel pointed out, well, your fingerprint was on the outside of the car. If you read that in context, the reason that defense counsel said that is defense counsel was explaining his strategic decision. Counsel had made a strategic decision to argue that, yes, there was blood on the defendant's pants, but it's possible he could have picked that up outside of the car. Defense counsel was saying, because there was a fingerprint on the outside of the car, I couldn't just argue you were not supposed to be doing that at all. So I think if this Court reviews the transcript, it will see that as it relates to what defense counsel did, defense counsel did exactly what defense counsel should have done in the preliminary inquiry, which was factually explain why he made certain decisions, why he took certain actions, explain what he did to investigate certain witnesses. It is correct, however, counsel, that at this Crankle proceeding, it was kind of two against one. It was the defense attorney and the prosecutor against a pro se defendant. Isn't that a fact? No, it's not, Your Honor. As I explained, the defendant was given the opportunity to explain these claims. But he was there representing himself, correct? That's how Crankle proceeds. That's correct. And then you had defense counsel and the prosecutor against him, making statements that were adverse to his claims, correct? I would say it's important to break them down to what defense counsel did and what the prosecutor did. We want, this Court has repeatedly instructed trial courts that you should ask defense counsel about the claims. It has repeatedly instructed them. And this is not a case where defense counsel was citing case law. Here's why it didn't do that. Defense counsel was factually answering these questions. But I'm asking about the participation of the prosecutor. This is what he said. I think the Court will find that Mr. Keith was a tenacious opponent, to say the least. And he filed motions to dismiss after the first trial. He attacked every witness from fingerprint to DNA. He's supporting the defendant. They're there in opposition, or supporting the defense counsel. They're in opposition to the pro se defendant. That's not adversarial? Sorry, Your Honor. If I was not clear, if I said earlier, we do not dispute for the sake of argument that this was adversarial. So we are not asking this Court to hold that this was not adversarial. But it was not a lack. What we're asking this Court to determine is consistent with Jolly, is that even when the participation is adversarial, in some cases, adversarial participation can be harmless. And so that's step one. But I'm asking about this case. With this kind of participation, you're saying it's de minimis? I'm not saying it's de minimis. There's two steps. The first step is whether it's de minimis or adversarial. We are assuming for the sake of argument that it was not de minimis, it was actually adversarial. The second step is, well, was it harmless? We are arguing it's harmless for the reasons I explained. What this Court has repeatedly said is that the purpose of the preliminary inquiry is to create a record where the reviewing court can review the record and decide whether the trial court should have appointed counsel. But just so that I'm clear, you're saying when two attorneys are opposing a pro se defendant, that that is not an adversarial proceeding that requires this Court to reverse? That's not your position? I know you don't want us to reverse. But I'm just concerned about the nature of this proceeding. I think what I'm trying to say, Your Honor, is that defense counsel was not adversarial. Defense counsel was answering questions as this Court has repeatedly instructed. You continue to focus on defense counsel. I'm talking about the prosecutor. I'm sorry. I thought you mentioned both defense counsel and the prosecutor. As the prosecutor, we agree that participation should not be adversarial. Just as we agree that a defense lawyer should investigate possible alibi weaknesses. But just as in the Sixth Amendment context, we have a prejudice component to claims that defense counsel made a mistake, we are arguing that there should be a prejudice component when a prosecutor makes a mistake by adversarial participation. And the key question, as I've said and as this Court has repeatedly done, is that the main purpose of that preliminary inquiry is to create a record that allows a reviewing court to fairly review the claims and decide whether counsel should have been appointed. For the reasons I've explained, we have that record here. The comments were only at the very end. There was no evidence introduced. And counsel does not dispute his briefs. He can come up now and dispute. These are all strategic decisions that cannot, as a matter of law, be raised in court. So the particular facts of this case... I'm fine. I'm fine.  Unless there are any questions, yes. Thank you. Thank you, Mr. Chiavula. Ms. Wilhelm? Just to touch on a couple of points, the State's involvement is very troubling here, especially when this was a different... The Krankel Court was a different judge than the trial court. And having the State participate, having the State say he was tenacious, he did everything  And again, whether it's structural error is not the dispositive answer here. We're looking not at the nature of the error. We're looking at the result of the error. And I think this is what Justice is getting at here, that here, do we have the sort of neutral record that allows Harmel's error review? When my client is pro se, he's trying to present his claims, he is being interrupted here. He's got the court challenging him, asking him if he's saying his counsel is lying. He's got them, you know, you have to convince me that you're right. But isn't the court allowed, under all of our cases, to interact with the defendant and ask questions as to his claims? It is allowed to interact with the defendant as to his claims. Here, it did seem to have a rather stifling effect. Although my client did say he got to present his claims, in his motion for reconsideration, he was trying to advance things that he did not feel like he had an opportunity to talk to the court about. And again... And we can determine that reading the record. You can determine that reading the record if this court feels that the record is neutral and objective enough to allow that kind of Harmel's error review. And I think that that's a distinction here, that here we just do not have that sort of neutral record. It's the same problem that this court addressed in Jolly. Your opposing counsel said the record is not neutral and objective, but you do not indicate what is missing or perhaps why it is not neutral and objective. Can we not, from the record, determine whether the adversarial nature of any participant came to the proceedings? From the record, can't we determine that? It is very difficult to argue that something is missing, and that is a challenge here. It comes back to what this court was looking at in Jolly. Is this the kind of fair and neutral proceeding that leaves a record behind, that this court feels is a reliable record, reliable enough to determine whether the error is harmless? And in this situation, I would say no, this is not a reliable record. Returning to the reasonable doubt argument, the state said there were multiple eyewitnesses. Two people saw Aaron Jackson. Two people testified that they saw Aaron Jackson get out of the car at the second trial. Again, Norticia Bell completely recanted her testimony. She was in a better place. She was clean. She took the stand and repeatedly said, I did not see Aaron. I did not see Jill get out of the car. I said I did, because I didn't want to take the weight for this, because Detective McAfee said I would, but I didn't. Bill DeLotte said he got out of the driver's side of the car. She said a lot of things that were refuted by other witnesses in this case. She is simply not a credible eyewitness, and she had something to gain here. She came forward only at the second trial when she had been sitting in jail. Can we get back just for a minute to Crankle and the result of the error? Did the state participation in the preliminary inquiry, although I would say everybody seems to agree it was inappropriate and adversarial, we're talking about the harmless error aspects of it, did their participation prevent the court from creating an objective record for the appellate court to review? I believe so, Your Honor, because Because wouldn't that, isn't that important? Wouldn't that be the, you're arguing the fact that it's structural is not the important, structural or non-structural is not the important fact here, but what the result was. Yes. All right. So would you agree that if the court could articulate an objective record for the appellate court to review, that that result would be a harmless result if it's not total reliance on what the prosecutor did at the hearing? I think that that would be a step back from what this court said in Jolly, and I also don't think that that's applicable here with the record here. Well, point to why the result, what about the result would necessitate against us employing harmless error review, based on what the prosecutor did vis-a-vis what the court decided? Again, it is a record where you have defense counsel and a state arguing against my client who's unrepresented, and it's arguing negative, it's arguing what didn't get into the record, and it's asking, do you feel that this is a reliable record? When people are advocating against my client in what is supposed to be a neutral proceeding, that leaves a record that's unreliable. We simply do not know what is behind the record or what is missing from the record, and it is difficult, again, to argue what is missing, but that is what I'm doing here. It is the result of this error that makes this unreliable. Did the court merely reiterate the prosecution's assertion that defense counsel was tenacious, a tenacious opponent, or did the court give specific examples of counsel's performance? I'm going back, and I'm trying to recall that, Your Honor, and I'm not confident. That's important, isn't it? It is important, and I'm sorry. If the trial court looked at the record and came up with a thorough review of the record to say that counsel's performance was not deficient, separate and apart from the prosecutor, wouldn't that be the epitome of harmless error? From what I can recall in my mind, the court did go through the facts and everything. I think the problem is, in my mind, what the court missed are that aspects of the defense counsel's explanations are belied by the record, specifically when he said, I was relying on this as my trial strategy, and his trial strategy is belied by the record. And those things where he took the defense counsel's word for it, but it is belied by the record, were errors in his opinion. Wouldn't you agree that it's our job to find out if the state's argument led the court to rule differently, that it might have ruled had the prosecution not been given an opportunity to present at the critical hearing? If you're reviewing for harmless errors. And that's where I'm lost a little bit. I'm lost because non-structural error seems to be always subject to harmless error review. And you've said like three or four times now, it's not the nature of the error, it's the result. So for purposes of argument, I'm saying let's throw out the nature of the error. What was the result here? And if there's an objective record to be reviewed, that goes to the nature of the error, right? Or lack thereof. Yes, Your Honor. And I believe if you review the trial court's findings, you will find he did accept the defense counsel's explanations, in particular why he did and did not object in the closing argument. But again, his own statements in closing argument, his own shown strategy contradicts what he said at the critical hearing. So I'm confused, Your Honor. You're saying it's the defense counsel's participation in the critical hearing that is the concern here? Or is it the state's participation in the critical hearing? What did the state do that somehow you say the record belies those arguments? I'm sorry. I may have misspoke. The defense counsel gave specific reasons, strategic reasons why he did things that Aaron was complaining about, and the record belies his explanations. It belies why defense counsel made those statements or did not object in closing argument. Is there anything about the state's participation that if we looked at the record carefully, that we would see that the record is such that it's not an objective record because of what the state's participation implies? I think what the state's participation did was it tainted the trial court's review of the record because it had in its mind this was a tenacious attorney. This was an attorney who questioned everybody. Again, the state's words, standing in conjunction with defense attorney against my client, tainted that review against my client. I would, in just a moment, to finish up with the prosecutorial misconduct, the state had said that these errors are isolated. They are not isolated. These are the two key pieces of evidence here, a fresh print and a DNA match. These are critical pieces of error and testimony, and maybe he only said these things once, but he definitely picked the two pieces of evidence that he needed to be pushed over. And when we're talking about the scales of justice here, Sebby talks a lot about the scales of justice. Here the prosecutor put his thumb on the scales of justice with these two clear misstatements of the facts. And for that reason, I would ask that you reverse and remand for a new trial. Thank you. Thank you, Ms. Wilhelm. Case number 124112, People v. Aaron Jackson, will be taken under advisement as agenda number one. Counsel, Ms. Wilhelm and Mr. Shkula, thank you for your arguments this morning.